# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| DANIEL H., <br><br> Plaintiff, <br><br> vs. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 24-cv-3047-LTS <br><br> **REPORT AND RECOMMENDATION** |

_____

Daniel H. ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") in denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. Sections 401-34. For the reasons that follow, I recommend that the Commissioner's decision be **affirmed**.

## I. BACKGROUND

Claimant was born in 1975. (AR[1] at 214.) He earned a GED in 1998. (*Id*. at 198.) Claimant allegedly became disabled due to undiagnosed chronic back pain, ulnar tear, bulging discs in back, and double by-pass heart surgery. (*Id*. at 197.) Claimant's onset of disability date is January 1, 2019. (*Id*. at 181.) On December 6, 2021, Claimant protectively filed his application for DIB. (*Id*. at 23, 179.) His claim was denied originally on March 24, 2022 (*id*. at 23, 72-80), and was denied on reconsideration on November 2, 2022. (*Id*. at 23, 81-90.) A hearing was held on October 23, 2023, with

---

[1] "AR" cites refer to pages in the Administrative Record.

1

Claimant and his attorney James Greeman appearing by online video before Administrative Law Judge ("ALJ") Kim Fields. (*Id*. at 40-71.) Vocational Expert ("VE") Jeff Johnson also appeared at the hearing. (*Id*.) Claimant and the VE both testified at the hearing. The ALJ issued an unfavorable decision on November 16, 2023. (*Id*. at 23-34.)

Claimant requested review and the Appeals Council denied review on June 28, 2024. (*Id*. at 11-13.) Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

On November 27, 2024, Claimant timely filed his Complaint in this Court. (Doc. 1.) On April 7, 2025, all briefing was completed, and the Honorable Leonard T. Strand, United States District Court Judge, referred the case to me for a Report and Recommendation.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant has a disability when, due to physical or mental impairments, the claimant:

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A). A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability to find work,

lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

To determine whether a claimant has a disability, the Commissioner follows a five-step sequential evaluation process. *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quotation omitted).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id*. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. § 404.1572(a)-(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id*. An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id*. § 404.1520(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. § 404.1521(b). These include:

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to

3

> supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Id.* (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999) (quotation omitted).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). RFC is the most an individual can do despite the combined effect of all his or her credible limitations. *Id.* § 404.1545(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work the claimant performed within the fifteen years prior to this application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b)(1). If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4)(v), 404.1560(c)(2). The ALJ must show not only that the claimant's RFC will allow the claimant to do other work, but also that other work

exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

## A. *The ALJ's Findings*

The ALJ made the following findings regarding Claimant's disability status at each step of the five-step process. Initially, the ALJ determined that Claimant met the insured status requirements through June 30, 2023. (AR at 25.) The ALJ then applied the first step of the analysis and determined that Claimant had not engaged in substantial gainful activity from his alleged onset date of January 1, 2019 through the date last insured, June 30, 2023. (*Id*.) At the second step, the ALJ concluded from the medical evidence that Claimant suffered from the following severe impairments through the date last insured: lumbar spinal stenosis resulting in compromise of the Cauda Equina, abnormality of a major joint in any extremity, and ischemic heart disease. (*Id*.) At the third step, the ALJ found that through the date last insured Claimant did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id*. at 27.) The ALJ evaluated Claimant's claims under listing 1.15 (disorders of the spine), 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), 1.18 (abnormality of a major joint), and 4.02 (chronic heart failure). (*Id*. at 28.) At the fourth step, the ALJ determined that Claimant had the following RFC through the date last insured:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR [§] 404.1567(b) except that the [C]laimant can lift 20 pounds occasionally and 10 pounds frequently. The [C]laimant can carry 20 pounds occasionally and 10 pounds frequently. The [C]laimant can sit for 6 hours, stand for 6 hours, and walk[] for 6 hours. The [C]laimant can push and pull as much as can lift and carry. The [C]laimant can climb ramps and stairs occasionally; can never climb ladders, ropes, or scaffolds; balance occasionally; stoop occasionally; kneel occasionally; crouch occasionally; and crawl occasionally. The [C]laimant can work at unprotected heights occasionally; [work around] moving mechanical parts occasionally; operate a motor vehicle occasionally; work in dust, odors,

> fumes, and pulmonary irritants occasionally; and in extreme could occasionally.

(*Id.*) Also at the fourth step, the ALJ determined that through the date last insured Claimant was capable of performing his past relevant work in retail sales. (*Id.* at 32.) At step five, in the alternative, the ALJ found that through the date last insured there were jobs that existed in significant numbers in the national economy Claimant could perform, including charge account clerk, callout operator, and document preparer. (*Id.* at 33.) Thus, the ALJ concluded that Claimant was not disabled. (*Id.* at 34.)

## *B.     The Substantial Evidence Standard*

The ALJ's decision must be affirmed "if it is supported by substantial evidence in the record as a whole." *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021) (quoting *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law. . . . [T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotations omitted); *see also Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) ("Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.") (Quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)). Thus, a court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). "An ALJ's decision is 'not outside the zone of choice' simply because [the c]ourt 'might have reached a different conclusion had [it] been the initial finder of fact.'" *Kraus*, 988 F.3d at 1024 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)).

6

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers "both evidence that detracts from the Commissioner's decision, as well as evidence that supports it." *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)). However, "even if inconsistent conclusions may be drawn from the evidence, the [Commissioner's] decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (providing that a court "may not reverse simply because [it] would have reached a different conclusion than the [Commissioner] or because substantial evidence supports a contrary conclusion").

### III. DISCUSSION

#### A. *Parties' Arguments*

Claimant argues that the ALJ "failed to properly assess the [Claimant's] need for a hand-held assistive device, specifically a cane." (Doc. 10 at 10.) Claimant maintains that the ALJ did not "properly consider the particular facts of this matter, and in fact mischaracterize[d] the medical evidence in the record." (*Id.* at 10-11.) Claimant contends that "[n]otwithstanding the considerable record evidence showing that the [Claimant] used the cane for ambulation and balance, and that the necessity was supported by the medical record, the ALJ failed to sufficiently articulate why the cane was not medically necessary." (*Id.* at 14.) Claimant argues that the "record in this case does not contain only the notes of providers who observed the [Claimant] using a cane, but also

7

Case 3:24-cv-03047-LTS-MAR    Document 14    Filed 03/13/26    Page 7 of 14

treatment notes repeatedly indicating that the [Claimant] had weakened motor strength, pain due to weight bearing, and gait abnormality" and thus, given such evidence, Claimant "believes that the record aptly illustrates the medical necessity for a cane." (*Id.*)

The Commissioner argues that the "ALJ does not need to prove the cane was *not* necessary, only to point to substantial evidence supporting a finding that [Claimant] cannot prove it *was* necessary." (Doc. 12 at 15) (emphasis in original). The Commissioner also argues that:

> [T]he lack of a prescription was not the only evidence on which the ALJ based his finding that [Claimant] did not require a cane for ambulation. As discussed above, the ALJ also identified objective evidence, including both treatment notes and diagnostic test results; [Claimant's] testimony and noncompliance with treatment; and the persuasive prior administrative medical findings made by Drs. Byrnes and Griffith ([AR at] 29-31). [Claimant's] straw-man attack on the ALJ's observation that the cane was not prescribed does not help meet his burden.

(*Id.* at 16.) Further, the Commissioner asserts that:

> Much of [Claimant's] bullet-point discussion of "medical records" is drawn from treatment notes in which providers documented his subjective complaints. . . .
>
> And a number of [Claimant's] other bullet-point excerpts merely indicate that he used a cane on a certain day, not that he necessarily required one for ambulation, nor the circumstances in which a cane may have been necessary, or even merely helpful. In the end, when one looks at the actual record, the evidence of medical necessity cited in [Claimant's] brief is remarkably weak, if not entirely nonexistent.

(*Id.* at 18-19.)

### B.    *Relevant Law*

The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803. Relevant

8

evidence for determining a claimant's RFC includes "medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations." *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007).

The ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007). "There is no bright line rule indicating when the [ALJ] has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008).

SSR 96-9p provides guidance for exertional limitations and restrictions related to a medically required hand-held assistive device, such as a cane:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case.

1996 WL 374185, at *7 (Soc. Sec. Admin. July 2, 1996). "The standard described in SSR 96–9p does not require that the claimant have a prescription for the assistive device in order for that device to be medically relevant to the calculation of her RFC." *Emery v. Berryhill*, No. 17-cv-1988 (TNL), 2018 WL 4407441, at *2 (D. Minn. Sept. 17, 2018) (quotation omitted).

C. *Analysis*

In her decision, the ALJ addressed Claimant's use of a cane as follows:

> The claimant has also used a cane, but the undersigned has not identified evidence that it was prescribed by a doctor. Often, a person seeking

9

> disability, who is using an assistive device, especially canes and sometimes walkers, borrow the cane from a relative or friend, or purchases one. The use of the device is self-prescribed. This raises the issue of whether the assistive device is "medically necessary." If there is no prescription for the device, it is possible that Social Security will determine that there is no medical need for the device. If there is no medical need for the device, the assumption is that the device is not needed for walking effectively. In light of the lack of identifiable prescription for a cane, combined with the claimant's mild degenerative disc disease on imaging, and lack of evidence of lower extremity dysfunction, the undersigned is unable to concluded that a walking assistive device is necessary for ambulation.

(AR at 30.) The fact that the ALJ, among other factors, considered the lack of a prescription for a hand-held assistive device in addressing Claimant's use of a cane in determining Claimant's RFC is not an error. *See Toland v. Colvin*, 761 F.3d 931, 936 (8th Cir. 2014) (in upholding and ALJ's RFC determination, the Eighth Circuit noted that "[t]here is no evidence in the record that . . . any . . . physician prescribed Toland a cane or other assistive device for walking"); *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (finding ALJ's RFC determination was supported by substantial evidence based on, among other things, "no medical records or opinions documenting Raney's use of a cane as being medically necessary").

In *Mya Y. v. Saul*, No. 20-cv-1296 (JRT/LIB), 2021 WL 3023691 (D. Minn. June 28, 2021), the district court noted that:

> As the Courts of this District have recognized, the Eighth Circuit Court of Appeals has not addressed what specific documentation a claimant must provide to establish the limitations of a medically required hand-held assistive device. *See*, *e.g.*, *Patricia M. v. Saul*, No. 18-cv-3462 (DSD/HB), 2020 WL 3633218, at *8 (D. Minn. Feb. 5, 2020), *report and recommendation adopted sub nom.*; *McArdell v. Saul*, 2020 WL 1951748 (D. Minn. Apr. 23, 2020); *Edwards v. Berryhill*, No. 5:17-cv-5092 (KES), 2019 WL 1320314, at *14 (D.S.D. Mar. 22, 2019). With no guidance from the Eighth Circuit Court of Appeals, the Courts of this District and other Districts within the Eighth Circuit have cited favorable to the Third,

10

Seventh, and Tenth Circuits which have required an unambiguous opinion from a physician stating the circumstance in which the assistive device is medically necessary. *Patricia M.*, 2020 WL 3633218, at *8; *Edwards*, 2019 WL 1320314, at *14; *Tripp v. Astrue*, 489 F. App'x 951, 954 (7th Cir. 2012) (finding that the treating physician's statement that the claimant "does need a crutch" lacked the specificity to establish whether the crutch was a medical necessity); *Staples v. Astrue*, 329 F. App'x 189, 191–92 (10th Cir. 2009) (finding that the treating physician's statement that the claimant "still uses a cane to walk" was insufficient to establish medical necessity); *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002) (finding that the evidence did not establish the claimant's cane was medically necessary when the treating physician provided a "script" for a cane and checked a box labelled "hand-held assistive device medically required for ambulation" in a report). In other words, the plaintiff "must show the cane is medically required by offering medical documentation that (1) demonstrates the cane is necessary to help her walk or stand and (2) describes the circumstances in which the device is needed." *Patricia M.*, 2020 WL 3633218, at *7.

*Id.* at *5. Here, no medical documentation demonstrates that a cane is necessary to help Claimant walk or stand. I have reviewed the medical evidence outlined in Claimant's brief, Doc. 10 at 12-14. Essentially, this evidence consists of notations in medical notes which indicate that Claimant uses a cane and that he has an antalgic gait. None of the evidence cited by Claimant suggests that a cane is medically necessary or even explains why the use of a cane may or may not be necessary.

Furthermore, the ALJ also addressed Claimant's mild degenerative disc disease and lack of evidence of lower extremity dysfunction in her decision as follows:

> The claimant has alleged extreme subjective pain, which he has cited as his reason for consuming a liter of alcohol per day and buying opioids off the street (Ex. 4F, 3; 5F, 3; 6F, 9). However, imaging of the claimant's spine contemporaneous to his alleged onset dated noted only "mild" degenerative disc disease at L5-S1, with a "small" annular tear, with no concerning central, foraminal or lateral recess stenosis (Ex. 2F, 8). In January of 2019, the month of his alleged onset date, the claimant was described with subjective pain with flexion of his spine, mild to moderate subjective low

11

> back tenderness, and "slightly" antalgic gait, but the claimant had full
> strength, intact reflexes, and preserved sensation (Ex. 2F, 8). His magnetic
> resonance image (MRI) "does not show a neurosurgical target," and
> surgery was not recommended. The claimant was advised to stop smoking
> and to exercise (Ex. 2F, 8). The claimant would report smoking one or
> two packs of cigarettes per day throughout the record (Ex. 4F, 6; 5F, 41,
> 52; 12F, 16).
>
> The claimant was noted at numerous subsequent imagings with only mild
> degenerative disc disease (Ex. 6F, 4; 7F, 9; 25F, 6, 10). An MRI from
> October of 2023, the most recent in the record, noted no significant
> evidence of spinal canal or foraminal narrowing at the L1-L5 levels. Disc
> desiccation, diffuse disc bulging, and a "small" posterior central disc
> protrusion was noted at L5-S1, but with only "mild" left foraminal
> narrowing, and with no evidence of significant central spinal canal
> narrowing (Ex. 25F, 4). . . .
>
> At some examinations, the claimant has been noted with significant physical
> dysfunction. For example, in notes from "Hancock County Health
> System," the claimant was described with "markedly" reduced range of
> motion of the lumbar pain, tenderness to palpation of the facet joints,
> positive Faber's and Patrick's sign, and "significantly weaker" motor
> strength on the right (Ex. 9F, 6; 17F, 29; 25F, 15). However, at other
> examinations, the claimant has been noted with a non-tender back, with a
> normal range of motion (Ex. 6F, 11, 30; 8F, 20; 24F, 9). Similarly, while
> at some times the claimant was described with a significantly altered gait,
> at other he was inconsistently described with a normal gait and station (Ex.
> 5F, 19; 17F, 3 compared with 5F, 17 55; 8F, 20; 21F, 5). Also, despite
> the claimant's allegations of extreme pain, he has been described as in no
> acute distress (Ex. 4F, 6; 8F, 30; 11F, 21; 24F, 9).

(AR at 29-30.) I have also reviewed all of the evidence cited by the ALJ and find that it supports the ALJ's determination that Claimant's use of a cane is not medically necessary. The ALJ's findings are also supported by the agency doctors that reviewed Claimant's medical files. The ALJ found that:

> The opinions of the State Agency Consultants, that the claimant is limited
> to less than the full range of light work, lifting and carrying 20 pounds

12

occasionally, and 10 pounds frequently, with no climbing of ladders, ropes, or scaffolds, occasional postural limitations, and the need to avoid concentrated exposure to extreme cold, fumes, dusts and odors, and hazards such as machinery and heights (Ex. 1A; 4A). These opinions are persuasive. They are internally supported by citation to, and discussion of, the evidence (Ex. 1A, 6; 4A, 7). These opinions are also consistent with evidence that imaging of the claimant's spine, which has shown degenerative disc disease, but only mild issues, with no significant cord compromise (Ex. 6F, 4; 7F, 9; 25F, 6, 10; 25F, 4). The opinions are also consistent with evidence where the claimant has been noted with a non-tender back, with a normal range of motion (Ex. 6F, 11, 30; 8F, 20; 24F, 9). Similarly, while at some times the claimant was described with a significant altered gait, at other he was inconsistently described with a normal gait and station, which is also consistent with these opinions (Ex. 5F, 19; 17F, 3 compared with 5F, 17 55; 8F, 2; 21F, 5).

(*Id.* at 31.)

Overall, in determining Claimant's RFC, the ALJ addressed and considered Claimant's medical history and treatment for his complaints. (AR at 29-32.) The ALJ also properly considered and discussed Claimant's subjective allegations of disability in making her overall disability determination, including determining Claimant's RFC, finding that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" and "the objective evidence does not support that the [C]laimant limited as alleged." (*Id.* at 29.)

Therefore, having reviewed the entire record, I find that the ALJ properly considered Claimant's medical records, observations of treating physicians, and Claimant's own description of his limitations in making the ALJ's RFC assessment for Claimant. *See Lacroix*, 465 F.3d at 887. Further, I find that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, I conclude that the ALJ made a proper RFC

determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803.

Accordingly, I recommend that the District Court affirm the ALJ's decision.

## IV. CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **AFFIRM** the decision of the ALJ.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to de novo review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 13th day of March, 2026.

_____
Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa